PARKER v. STATE. (No. 4564.)

(Court of Criminal Appeals of Texas. June 29, 1917. On Motion for Rehearing, Feb. 20, 1918.)

1. CRIMINAL LAW ☞1092(7)—BILL OF EXCEPTIONS—TIME OF FILING.

At a term beginning January 1st and ending March 30th defendant was convicted, his motion for new trial being overruled on March 12th, at which time he was accorded 60 days within which to file bills of exception. On May 11th an additional extension of 10 days was granted, and on May 26th defendant obtained an additional extension of 7 days. Vernon's Ann. Code Cr. Proc. 1916, art. 744, declares that on trial of any criminal action the defendant may tender his bill of exceptions, and the judge shall sign such bill of exceptions under the rules prescribed in civil suits, while article 845 declares that, when an appeal is taken from the judgment rendered in any cause in any district or county court, the parties shall be entitled to 30 days after the date of adjournment of court in which to prepare, or cause to be prepared, and to file a statement of facts and bills of exception, and upon good cause shown the judge trying the cause may extend the time, provided that, if the term of court may by law continue more than 8 weeks, such statement of facts and bills of exception shall be filed within 30 days after final judgment shall be rendered, unless the court shall by order entered of record extend the time for filing such statement of facts and bills of exception. *Held,* that bills of exception which were filed on June 1st cannot be considered, the time for filing the same having expired before the entry of the order of May 26th granting 7 days' additional time for extension.

On Motion for Rehearing.

2. PROSTITUTION ☞4—EVIDENCE.

While the right of one accused of crime to make bond is guaranteed, evidence in a prosecution for pandering in violation of Vernon's Ann. Pen. Code 1916, art. 506a, that accused agreed to obtain bond for a prostitute and urged her to continue to ply her vocation, is admissible.

3. PROSTITUTION ☞4 — EVIDENCE—ADMISSIBILITY.

In a prosecution under Vernon's Ann. Pen. Code 1916, art. 506a, for pandering, evidence that accused whipped a prostitute and required her to remain at home for the purpose of plying her vocation is admissible.

4. PROSTITUTION ☞4 — EVIDENCE—ADMISSIBILITY.

In a prosecution under Vernon's Ann. Pen. Code 1916, art. 506a, for pandering, evidence that accused made inquiries of officers who were watching the house in which a prostitute in whom he was interested lived was admissible.

5. PROSTITUTION ☞4 — EVIDENCE—ADMISSIBILITY.

In a prosecution for pandering in violation of Vernon's Ann. Pen. Code 1916, art. 506a, evidence that accused caressed a prostitute and received money from her while she was living in a disorderly house is admissible.

6. PROSTITUTION ☞4—EVIDENCE—ADMISSIBILITY.

In a prosecution for pandering under Vernon's Ann. Pen. Code 1916, art. 506a, denouncing the offense of persuading or coercing an inmate of a house of prostitution to remain therein as an inmate, evidence that accused while a prostitute was living at another house struck her because he did not receive money enough from her is admissible, though the charge submitted the question whether accused induced the prostitute to remain in a house of prostitution at a different address; for accused's control over the prostitute was material, and evidence of his striking her part of the res gestæ.

7. CRIMINAL LAW ☞829(1)—TRIAL—INSTRUCTIONS.

The refusal of special charges covered by the charge given is not error.

8. PROSTITUTION ☞4 — EVIDENCE — SUFFICIENCY.

In a prosecution under Vernon's Ann. Pen. Code 1916, art 506a, for pandering, evidence *held* sufficient to sustain a conviction.

9. CRIMINAL LAW ☞555 — WEIGHT OF EVIDENCE.

In a criminal prosecution, conflicts in the testimony of the prosecuting witness go to its weight, but not its sufficiency to sustain a conviction.

Appeal from Criminal District Court, Dallas County; C. A. Pippen, Judge.

Fay Parker was convicted of pandering, and he appeals. Affirmed.

A. S. Baskett, of Dallas, for appellant. E. B. Hendricks, Asst. Atty. Gen., for the State.

MORROW, J. Appellant was convicted of pandering, and his punishment assessed at five years' confinement in the state penitentiary.

The prosecution is under the pandering statute (article 506a, Vernon's P. C.). No defects are pointed out and none discovered. The evidence which is disclosed by the state-

ment of facts is sufficient to support the finding of the jury. The court gave a written charge to which it appears there was some exceptions filed. It is also apparent that there are exceptions taken to matters of procedure occurring in the course of the trial. These, as well as the exceptions to the charge, appellant undertook to bring before the court by bills of exceptions. It appears, however, that owing to the delay in filing these bills we are precluded by the law from considering them. The term of court at which appellant's trial took place began January 1 and ended March 30, 1917. His motion for a new trial was overruled March 12th, at which time he was accorded 60 days within which to file bills of exceptions. On May 11th an additional extension of 10 days was granted and on May 26th he, by motion, sought and obtained an additional extension of 7 days.

[1] The state, through the Assistant Attorney General, in a motion filed, brings to the attention of the court the facts recited above with reference to the several dates mentioned, and calls attention to the fact that the bills of exceptions were filed on the 1st day of June, 1917, and insists that the court is required by law to ignore them. The particular contention made by the state was that the order of the court made May 26th allowing 7 additional days was not effective because on May 21st prior to the date of the order named the time for filing the bills of exceptions allowed in previous orders had expired, and that after its expiration the court lost control of the matter. Supporting this contention, the state's counsel cites decisions of this court in Armstrong Case, 60 Tex. Cr. R. 59, 130 S. W. 1011, and Presley v. State, 60 Tex. Cr. R. 102, 131 S. W. 332. These decisions, in construing the statutes with reference to the extension of time for filing bills of exceptions (article 845, C. Cr. P.), have construed them in accord with the state's contention, and this construction makes it necessary for us to sustain the state's motion.

Having examined the statement of facts and such matters in the record as, under the rules, we are privileged to pass upon, and being precluded from passing upon the questions raised by the bills of exceptions (see Vernon's C. C. P. art. 744, and notes), and there having been brought to our attention no reversible error, and no fundamental error discovered, the judgment of the lower court is affirmed.

#### On Motion for Rehearing.

An affirmance of this case was ordered on account of an incomplete record, which record has since been corrected in connection with the motion for rehearing, rendering it proper that the merits of the case be considered.

The conviction was for pandering, which is denounced by article 506a, Vernon's P. C. The particular phase of the statute upon which this conviction rests is the following:

"Or any person who shall, by promises, threats, violence or by any device or scheme, cause, induce, persuade or encourage an inmate of a house of prostitution to remain therein as such inmate."

The promises, threats, violence, device, and schemes relied upon by the state were alleged as follows:

"By then and there promising the said Mary Owens that he, the said Fay Parker, would and could protect her from the law, and promising her that he would and could make bail for her whenever arrested for a violation of the law, and that he, the said Fay Parker, would and could protect her from arrest by peace officers, and that he would watch her house and keep a lookout for peace officers in that locality."

Mary Owens, a negro woman, was a common prostitute. She took up with appellant, and she, or he and she together, rented and occupied a house at No. 2637 Main street. For a while another negro woman and her man stayed in the house. Mary Owens claimed to have bought them out with money that appellant gave her. She said she bought because she thought she could make more money for herself than by having other girls there with her. Appellant stayed at a saloon near by where he was accessible. She said she "hustled there" and gave the money she made to appellant; that he brought some men there; that during the month she lived in the house she was arrested a number of times, as many as four times in one week; that Mr. Hightower got her out; that she learned of Mr. Hightower through appellant, who told her he sent him to get her out; that appellant on one occasion got her out and took her home; he told her to go home and hustle, remarking, "I will get you out if you get in;" this he repeated on various occasions; that sometimes when she was arrested appellant got her out, and other times Mr. Hightower got her out. She said, "When the officers went to pull the box at Crowdus and Elm streets, the defendant would let me know so they wouldn't get me and I could hustle;" that appellant whipped her, and said to her, "Why in the hell don't you quit drinking and stay at home so you can make money." She says when she was arrested so many times that if she did not have the arrangement with appellant about protecting her and getting her out she would have left there; that she knew she had some one to get her out of jail, so she went back. She claimed to have given appellant all the money she made.

There were some contradictions in the cross-examination of this witness. One of these is stressed by appellant, the witness testifying as follows:

"Fay never did whip me to make me stay there at 2637 Main street, but he whipped me to make me stay at home and make money so I could give him a dollar or two. I did move away from 2637 Main street to 2515 Main street. He never made me any promises that

he would watch the officers for me. He would tell me to go on home and hustle, and 'I will get you out.' He never made any agreement of that kind that he wanted me to stay there, and if I would stay there he would make my bond."

There was some other evidence, most of which is complained of in bills of exception. One of these refers to a statement by the witness Mary Owens that she gave appellant $5 that she had made at the corner of Crowdus and Commerce streets, and that she did not know whether the defendant required her to give him all the money she made, but that she gave it to him, and that if she did not give it to him "he got all swelled up, sore, maybe he would curse her out, say something to her." Objection urged to this was it was immaterial and irrelevant and not charged in the indictment. The statement quoted above is with reference to the appellant whipping her because she got drunk and would not stay at home, and asking her "why in the hell she did not stay at home and make money."

[2] Also objection was made to evidence of the fact that Mary Owens was arrested a number of times while she lived at 2637 Main street, and the defendant made her bond and told her to go back and hustle. With reference to this appellant insists that the right to make bond is a privilege guaranteed by the Constitution, which is true, but this evidence was offered in support of an allegation that the appellant promised to make bond as an inducement to a common prostitute to continue to ply her vocation. The right of one accused of crime to make bond is guaranteed, but is different from the right of one to agree as an inducement to commit crime that he would secure release from custody after it is committed.

[3] The other two matters referred to, we think, were not subject to the objections made. The relation of the parties, appellant and Mary Owens, and his influence over her, the delivery by her to him of money she had made in prostitution, and the fact that he whipped her because she would not stay at home, or he wanted her to stay at home and make money, appear to have been admissible upon the issues raised. We have not been cited to any authorities to the contrary.

[4, 5] The proof that appellant made inquiry of officers who were watching the house of prostitution in which Mary Owens lived was, we think, legitimate. Nor can we agree with the soundness of the proposition that the case should be reversed because the witness testified he had seen appellant, while at the house at which Mary Owens lived, kiss her, and that when appellant was arrested he was at the same house.

The objection to testimony that appellant struck Mary Owens, and received money from her on several occasions while she was living in the house mentioned, was, we think, not objectionable. It seems to have been relevant to the issues involved.

[6] Complaint is made of proof that while Mary Owens was living at another house at No. 2515 Main street appellant had struck her because he did not get enough money from her, the contention being that it was immaterial and irrelevant, and did not support the allegation of the indictment, and was prejudicial and tended to establish another offense. The court, qualifying the bill declined to approve that part of it last mentioned; that is, he says there was no complaint that it tended to prove another offense. It does not seem to us that it does so. There is no particular house named in the indictment during the relation of appellant with Mary Owens. She lived, it seems, in more than one house at different times. His intimacy and relation and opportunity to control her were circumstances bearing upon the issues in the case. The fact that the court based his charge upon an inquiry of the jury as to whether or not appellant was guilty of inducing her to remain in a particular house at No. 2637 Main street does not, it occurs to us, show error in admitting the testimony complained of. In so far as striking her was another offense, it seems to have been admissible as part of the res gestæ, one of the means of inducing Mary Owens to remain in a house of prostitution.

[7] Appellant requested special charges which were applicable to his defenses, and the refusal of which would not have been justified except for the fact that the trial court in its main charge to the jury embraced in an appropriate manner the same matters as those contained in appellant's special charges.

[8, 9] We think the evidence was sufficient to sustain the conviction. The fact that the witness Mary Owens made some contradictory statements with reference to certain phases of the evidence went to the weight of her testimony, and is not available to sustain appellant's contention that her evidence was as a matter of law destroyed thereby.

The motion for rehearing is overruled.